UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DEBRA J. FULMER

                    Plaintiff,

           v.                                **REPORT AND RECOMMENDATION**
                                                    **08-CV-0740 (GLS)**

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

                    Defendant,

## I.     Introduction

           Plaintiff Debra J. Fulmer brings this action pursuant to the Social Security Act

("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the

Commissioner of Social Security ("Commissioner"), denying her application for Disability

Insurance Benefits ("DIB").[1] Specifically, Plaintiff alleges that the decision of the

Administrative Law Judge ("ALJ") was not supported by substantial evidence and

contrary to the applicable legal standards. The Commissioner argues that the decision

was supported by substantial evidence and made in accordance with the correct legal

standards.

## II.     Background

           Plaintiff protectively filed for DIB on March 28, 2005, alleging an onset date of

June 9, 2003 (R. at 52-54, 59).[2] Plaintiff alleges disability due to bilateral knee and leg

impairments, as well as back, right hip, and mental impairments. Her application was

---

[1] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman
A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated October 2, 2009.
[2] Citations to the underlying administrative record are designated as "R."

denied initially on June 1, 2005[3] (R. at 29-31). Plaintiff filed a request for a hearing on June 22, 2005 (R. at 36).

On February 6, 2007, Plaintiff appeared before the ALJ (R. at 419). The ALJ considered the case *de novo* and, on February 22, 2007, issued a decision finding Plaintiff not disabled (R. at 16-25). The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review on May 29, 2008 (R. at 6-10). On July 9, 2008, Plaintiff filed this action.

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[4]

### III.    Discussion

### A.    Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. <u>See</u> 42 U.S.C. §§ 405(g), 1383 (c)(3); <u>Wagner v. Sec'y of Health & Human Servs.</u>, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. <u>Johnson v. Bowen</u>, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to

---

[3] Plaintiff stated in her brief that she also applied for Supplemental Security Income ("SSI") at the same time she applied for DIB. Plaintiff's Brief, p. 1. According to Plaintiff, "[t]his application for SSI was denied, based on the Plaintiff's earnings from No-Fault insurance benefits, on April 22, 2005." <u>Id.</u> The Court could find no evidence of these events in the record.

[4] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).

uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[5] to

---

[5]The five-step process is detailed as follows:

determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

---

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

Based on the entire record, the Court recommends remand for failure to properly apply the treating physician rule.

**B.    Analysis**

### 1.  The Commissioner's Decision

In this case, the ALJ made the following findings with regard to factual information as well as the five-step process set forth above: (1) Plaintiff had not engaged in substantial gainful activity since her alleged onset date, June 9, 2003 (R. at 18); (2) Plaintiff's "degenerative joint disease of the lumbar spine and status-post lumbosacral laminotomy[6] and discectomy" were severe impairments (R. at 18); (3) Plaintiff's "diabetes mellitus, status-post hysterectomy, abnormal pap test, status post right femur fracture . . ., sleep apnea, obesity, atypical chest pain . . ., history of left knee pain and remote history of atrial flutter" were not severe impairments (R. at 20); (4) Plaintiff "d[id] not have an impairment or combination of impairments that me[t] or medically equal[ed] one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" (R. at 20); (5) Plaintiff retained

> the residual functional capacity to lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk 6 hours in an 8-hour day and sit 6 hours in an 8-hour day. She can occasionally climb, balance and crawl. She can understand remember and perform simple and some more complex tasks with supervision and independently, can maintain attention and concentration for tasks and can interact appropriately with others

(R. at 21); (6) Plaintiff's statements concerning her symptoms "[we]re not entirely credible" (R. at 24); (7) Plaintiff "[wa]s unable to perform any past relevant work" (R. at

---

[6] Laminotomy and laminectomy are spinal decompression surgeries involving the lamina, a thin bony layer that covers and protects the spinal canal and spinal cord.  Laminotomy is the partial removal of the lamina. Laminectomy is the complete removal of the lamina.   Eidelson, S.  <u>Save Your Aching Back and Neck, A Patient's Guide</u> (Second Edition, May 2002).

24); (8) At the time of Plaintiff's alleged onset date, she was a younger individual (R. at 24); (9) Plaintiff "ha[d] at least a high school education and [wa]s able to communicate in English" (R. at 24); (10) According to Medical-Vocational Rule 202.20,[7] "there [we]re jobs that exist[ed] in significant numbers in the national economy that [Plaintiff could] perform" (R. at 24-25). Ultimately, the ALJ found that Plaintiff was not under a disability at any time through the date of his decision (R. at 25).

### 2.  Plaintiff's Claims:

Plaintiff argues that the decision of the ALJ is neither supported by substantial evidence nor made in accordance with the proper legal standards. Specifically, Plaintiff argues that a) the ALJ failed to properly apply the treating physician rule; b) the ALJ erred in failing to find several of Plaintiff's impairments to be severe; c) the ALJ erred in analyzing Plaintiff's credibility; d) the residual functional capacity ("RFC") is not supported by substantial evidence; e) the ALJ erred in finding Plaintiff obtained a high school education; and f) the ALJ erred in finding Plaintiff could perform work in the national economy in significant numbers.

### a)  The ALJ Erred in Applying the Treating Physician Rule

Plaintiff argues that the ALJ erred in improperly applying the treating physician rule to the opinions from Plaintiff's i) treating physician, Dr. M.A. Rathika Martyn; and ii) treating back surgeon, Dr. Richard DiStefano. Plaintiff's Brief, pp. 21-23, 26-32.

### i)  The ALJ Erred in Evaluating Dr. Martyn's Opinions

Plaintiff argues that the ALJ erred in failing to grant controlling weight to Plaintiff's

---

[7] Medical-Vocational Guideline Rule 202.20 requires a finding of not disabled when a claimant is a younger individual, is a high school graduate or more, and has unskilled or no past work. 20 C.F.R. Pt. 404, Subpt. P, App 2, Rule 202.20.

treating physician, Dr. Martyn. Plaintiff's Brief, pp. 21-23, 26-32. Plaintiff further argues that the ALJ erred in failing to re-contact Dr. Martyn and in failing to apply the required factors in evaluating her opinions. Plaintiff's Brief, pp. 22, 32.

After carefully reviewing the record, the Court concludes that the ALJ's reasons for failing to grant Dr. Martyn's opinions controlling weight are either unsupported by substantial evidence or the product of legal error.

Dr. Martyn supplied a medical source statement ("MSS") and a "complete medical report (physical)" in December 2005 (R. at 332-339). In a treatment note, dated December 20, 2005, Dr. Martyn stated that while she completed the Social Security Administration ("SSA") disability forms "to the best of [her] ability," her "one feeling [wa]s that the best way to objectively get results [wa]s to schedule [Plaintiff] for a functional capacity evaluation" (R. at 365). On May 29, 2006, Dr. Martyn completed a second MSS (R. at 378-83). The functional assessments in her second MSS were identical to the assessments in the December 2005 MSS (R. at 335-39, 378-83). Dr. Martyn also stated in her second report that there had been no change since December 2005 (R. at 383).

Dr. Martyn found that Plaintiff was limited to occasionally lifting less than ten pounds (R. at 335). Dr. Martyn opined that Plaintiff was limited to ten minutes of continuous sitting and standing. Id. Dr. Martyn opined that Plaintiff could sit and stand for a total of two hours in an eight hour workday, but would need unscheduled breaks every hour for fifteen minutes (R. at 335-36). Dr. Martyn found that Plaintiff would require periods of "walking around" approximately every ten to fifteen minutes (R. at 336). These periods of walking would each last ten minutes. Id. Finally, Dr. Martyn opined that Plaintiff could never climb, balance, kneel, crouch, crawl, stoop, or bend and

twist at the waist (R. at 337).

According to the "treating physician's rule,"[8] the ALJ must give controlling weight to the treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."  20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, 335 F.3d 99, 105 (2d Cir. 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).  "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is ground for remand."  Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)).

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. Under 20 C.F.R. § 404.1527(d)(1)-(6), the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors.  See de Roman, 2003 WL 21511160, at *9 (citing C.F.R. § 404.1527(d)(2)); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

The ALJ offered several reasons why he did not accept Dr. Martyn's opinions: a) they were based on Plaintiff's subjective complaints; b) they were not based on

---

[8] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

objective medical evidence; c) they were internally inconsistent; d) they were inconsistent with other evidence in the record; and e) Dr. Martyn stated that Plaintiff should obtain an independent functional assessment (R. at 22-24). Although the ALJ engaged in a lengthy analysis of Dr. Martyn's opinions, the ALJ's analysis and supporting reasoning is flawed.

First, it was error for the ALJ to dismiss Dr. Martyn's opinions because they were based, at least in part, on Plaintiff's subjective complaints. See McCarty v. Astrue, 2008 WL 3884357, at *6 (Aug. 18, 2008 N.D.N.Y.) (finding that "reliance on Plaintiff's subjective complaints is not a valid basis for rejecting [the treating physician's] opinion."). Indeed, "a patient's report of complaints, or history, is an essential diagnostic tool." Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003).

Second, the ALJ reasoned that Dr. Martyn's statement "that the best way to objectively determine what the claimant could do would be to schedule a functional capacity evaluation . . . . further suggest[ed] that her opinions [we]re based on [Plaintiff's] subjective reports and not objective clinical findings." Id. However, because the ALJ found Dr. Martyn's opinions were not based on objective medical evidence, he had an obligation to re-contact Dr. Martyn to determine on what her opinions were based. See 20 C.F.R. § 404.1512(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains . . . does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."); see also Clark v. Comm'r of Soc. Sec., 143 F.3d at 118 (internal citations omitted) ("[T]he lack of specific clinical findings in the treating physician's report [does] not, standing by itself, justify the ALJ's failure to credit the

9

physician's opinion."); Taylor v. Astrue, 2008 WL 2437770, at *3 (E.D.N.Y. June 17,

2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he

determined that the physician's opinion was "not well-supported by objective medical

evidence"). There is no indication in the record that the ALJ re-contacted Dr. Martyn for

an explanation of her opinions.

Third, the ALJ also failed to clarify Dr. Martyn's opinions despite finding them

internally inconsistent. Specifically, the ALJ considered Dr. Martyn's opinion that Plaintiff

"require[d] the ability to walk 10 minutes every 10 minutes . . . [to be] inconsistent with

her . . . opinion that [Plaintiff] could not walk even one block without rest . . ." (R. at 22).

However, the ALJ had an obligation to re-contact Dr. Martyn "when the report from [a]

medical source contains a conflict or ambiguity that must be resolved." 20 C.F.R. §

404.1512(e)(1). There is no indication in the record that the ALJ re-contacted Dr. Martyn

for clarification.

Next, the ALJ appears to have concluded that Plaintiff's swimming activities were

inconsistent with Dr. Martyn's opinions.  However, Plaintiff's testimony concerning her

swimming is not inconsistent with the doctor's opinions. The ALJ noted Plaintiff's

"testi[mony] that swimming help[ed] her pain reduce down from at 6-7 to a 2 on a scale

of 1 to 10, with 10 being the worst.  To the ALJ, this appears to have suggested that

most, if not all, activity help[ed] her pain and stiffness rather than Dr. Martyn's

suggestion that activity increase[ed] it" (R. at 24). Plaintiff did indeed testify that

swimming decreased her pain (R. at 450). However, the record does not support the

contention that all activities, such as walking and standing, would relieve her pain and

stiffness. Thus, Plaintiff's statement that swimming is beneficial is not inconsistent with

Dr. Martyn's opinions that activities including walking and standing exacerbate her pain. Moreover, Plaintiff engaged in aquatic exercises during physical therapy (R. at 273) suggesting that the physical therapists believed that aquatic exercise was beneficial to her. It is quite probable that Plaintiff was taught how to relieve her pain through aquatic exercises during those sessions.

Finally, in his analysis the ALJ appears to have discredited Dr. Martyn's opinions because of the doctor's mere suggestion that Plaintiff undergo an independent functional capacity analysis. The ALJ noted Dr. Martyn's statement that "the best way to objectively determine what the claimant could do would be to schedule a functional capacity evaluation" (R. at 23). The ALJ found that Dr. Martyn's statement "further suggest[ed] that her opinions [we]re based on the claimant's subjective reports and not objective clinical findings." As previously stated, Plaintiff's subjective complaints are "an essential diagnostic tool." Green-Younger, 335 F.3d at 107. Moreover, Dr. Martyn was not suggesting that her opinions were invalid. Indeed, Dr. Martyn stated she "review[ed] the forms and filled them out to the best of [her] knowledge and ability" (R. at 365). In addition, as stated above, on May 29, 2006, Dr. Martyn completed a second MSS (R. at 378-83). The functional assessments in her second MSS were identical to the assessments in the December 2005 MSS (R. at 335-39, 378-83). Dr. Martyn also stated in her second report that there had been no change since December 2005 (R. at 383).

Furthermore, the Plaintiff underwent a function-by-function evaluation on August 24, 2007, six months after the ALJ's decision[9] (R. at 385, 25). The results of this

---

[9] Plaintiff's examination was completed by Ms. Michele Enos, a registered, licensed, occupational therapist (R. at 387). Ms. Enos found that Plaintiff was limited to occasionally lifting five pounds to her shoulder and occasionally carrying five pounds. Id. Ms. Enos also found that Plaintiff was limited to

examination were sent to Dr. Martyn (R. at 384). In a letter to Plaintiff's attorney, Dr.

Martyn stated that she

> fully adopt[ed] the findings of [the] evaluation and its conclusion that the
> claimant is currently unable to engage even in sedentary work at the
> present time. Moreover, the results documented in such report would also
> have been applicable as of the date that I previously provided my own
> medical source statement of the claimant's physical capabilities,
> December 16, 2005. Such findings are also consistent with the
> examinations of the patient and her apparent physical abilities, as of
> October 3, 2003 through January 16, 2007.

Id. Both the letter from Dr. Martyn and the functional evaluation were submitted to the

Appeals Council (R. at 10). The new evidence became part of the record when the

Appeals Council denied review on May 29, 2008 (R. at 6-10); See Perez v. Chater, 77

F.3d 41, 45-46 (2d Cir.1996) (finding that when the Appeals Council denies review,

additional evidence submitted to the Council becomes part of the administrative record

and is therefore reviewable by the court). Therefore, although the ALJ was not able to

consider this evidence in his decision, the independent evaluation further undermines

the ALJ's reasoning for dismissing Dr. Martyn's opinions.

Moreover, although it is clear from the ALJ's decision that he denied Dr. Martyn's

opinions controlling weight, he failed to state the weight he afforded those opinions. This

is error. See Rodriguez v. Astrue, 2009 WL 637154, at *27 (S.D.N.Y. Mar. 9, 2009)

(finding error where the ALJ simply stated he was not granting Plaintiff's treating

physicians controlling weight); see also 20 C.F.R. § 404.1527(d) ("How we weigh

medical opinions. Regardless of its source, we will evaluate every medical opinion we

---

occasional sitting, standing, and walking but could never bend, reach, squat, kneel, crawl, or climb (R. at
387). Ms. Enos' findings concerning Plaintiff's ability to lift, carry, bend, kneel, crawl, and climb are fairly
consistent with Dr. Martyn's opinions. Ms. Enos' findings concerning Plaintiff's ability to sit, stand, and
walk appear somewhat less restrictive than Dr. Martyn's opinions.

receive.").

Plaintiff further argues that the ALJ erred in failing to apply the regulatory factors in analyzing the weight to grant Dr. Martyn's opinions. Plaintiff's Brief, pp. 32. On remand, if the ALJ fails to grant controlling weight to Dr. Martyn's opinions, he must then consider the factors in determining the appropriate weight to afford those opinions. 20 C.F.R. § 404.1527(d) ("Unless we give a treating source's opinion controlling weight . . ., we consider all of the following factors in deciding the weight we give to any medical opinion.").

### ii)  The ALJ Erred in Evaluating Dr. DiStefano's Opinions

Plaintiff argues that the ALJ erred in failing to grant the opinions from Plaintiff's treating back surgeon, Dr. DiStefano, controlling weight. Plaintiff's Brief, pp. 21-23, 26-32. Plaintiff further argues that the ALJ erred in failing to appropriately apply the factors in determining the weight to grant Dr. DiStefano's opinions. Plaintiff's Brief, p. 32.

On April 22, 2005, Dr. DiStefano performed a left L4-5 laminotomy with discectomy (R. at 291). Dr. DiStefano did not supply a functional assessment or MSS. However, on December 21, 2005, Dr. DiStefano found Plaintiff could work, but limited her to lifting no more than ten pounds and "no repetitive bending/lifting" (R. at 342). Notably, Dr. DiStefano's lifting and bending limitations are reasonably consistent with Dr. Martyn's opinions (R. at 342, 335, 337).

 As with Dr. Martyn, the ALJ noted Dr. DiStefano's functional opinions concerning Plaintiff's ability to lift, stand, sit, and bend, but failed to state the weight he afforded those opinions. This is error. See 20 C.F.R. § 404.1527(d) ("How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive.").

13

Moreover, while it is clear the ALJ did not adopt Dr. DiStefano's opinions, the ALJ failed to offer reasons why Dr. DiStefano's opinions were not entitled to controlling weight. This, also, is error. See Snell, 177 F.3d at 133 (citing Schaal, 134 F.3d at 505) ("Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is ground for remand.").

Plaintiff further argues that the ALJ erred in failing to apply the regulatory factors in analyzing the weight to grant Dr. DiStefano's opinions. Plaintiff's Brief, pp. 32. On remand, if the ALJ fails to grant controlling weight to Dr. DiStefano's opinions, he must then consider the factors in determining the appropriate weight to afford those opinions. 20 C.F.R. § 404.1527(d) ("Unless we give a treating source's opinion controlling weight . . ., we consider all of the following factors in deciding the weight we give to any medical opinion.").

Based on the foregoing, the Court recommends remand to allow the ALJ an opportunity to properly evaluate and state the weight he afforded to the opinions from Plaintiff's treating physician, Dr. Martyn, and treating surgeon, Dr. DiStefano. Furthermore, on remand, should the ALJ fail to grant the opinions from Dr. Stefano or Dr. Martyn controlling weight, he must consider the factors in determining what weight to afford those opinions. 20 C.F.R. § 404.1527(d)(1)-(6). Finally, if the ALJ again finds Dr. Martyn's opinions internally inconsistent or not supported by objective medical evidence, he should re-contact Dr. Martyn for clarification.

**b)   At Step Two, the ALJ's Analysis of Impairments Treated by Dr.
Martyn and Dr. DiStefano is Necessarily Flawed; the
Remaining Findings are Supported by Substantial Evidence**

Plaintiff argues that the ALJ erred in failing to find several of her impairments to

be severe. Plaintiff's Brief, pp. 15-17. The Court will evaluate Plaintiff's i) physical

impairments, and ii) mental impairment, separately.

### i. The ALJ's Analysis of Plaintiff's Left Knee and Left Leg Impairments is Flawed

Plaintiff argues that the ALJ erred in failing to find her right hip, right leg, left

knee, left leg impairments severe. Plaintiff's Brief, pp. 15-17.

The ALJ found Plaintiff's "degenerative joint disease of the lumbar spine and

status-post lumbosacral laminotomy and discectomy" to be severe impairments (R. at

18). The ALJ then went on to find that Plaintiff's "diabetes mellitus, status-post

hysterectomy, abnormal pap test, status post right femur fracture . . ., sleep apnea,

obesity, atypical chest pain . . ., history of left knee pain and remote history of atrial

flutter" to be non-severe impairments (R. at 20). The ALJ failed to make specific findings

concerning the severity of Plaintiff's right hip, right leg, and left leg impairments.

However, it is clear from the decision that the ALJ found those impairments not to be

severe.

Thus, the Court cannot reach whether the ALJ erred in failing to find Plaintiff's left

knee and leg impairments to be severe, because those findings are necessarily flawed.

Plaintiff was treated by Dr. Martyn and Dr. DiStefano for her left knee and left leg

impairments. The Court has previously recommended remand for failure to properly

evaluate the opinions from those physicians.  On remand, the ALJ should set forth an

analysis of the claimed left leg and left knee impairments and determine whether a de

minimis finding is appropriate and, if not, engage in an appropriate analysis of the

impairment.

ii.     **The ALJ's Analysis of Plaintiff's Right Knee and Right Leg Impairments is Supported by Substantial Evidence**

As for Plaintiff's remaining physical impairments, the ALJ did not err in failing to find Plaintiff's right hip and right leg impairments to be severe.

At step two, the severity step, only de minimis claims may be properly screened out.  Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995).  A finding of not severe is appropriate when an impairment, or combination of those impairments "does not significantly limit [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1521(a). If a claimant has more than a slight abnormality the analysis must continue to the third step. See Bowen v. Yuckert, 482 U.S. 137 (1987); Dixon v. Shalala, 54 F.3d 1019, 1030-31 (2d Cir.1995); Coughlin v. Comm'r of Social Security, No. 5:06-CV-497, 2008 WL 2357166, at *11 (N.D.N.Y. June 4, 2008) ("The severity analysis does no more than 'screen out de minimis claims.' If the disability claim rises above the de minimis level, then further analysis is warranted.").

Plaintiff was involved in a motor vehicle accident in June 2003, and underwent right hip surgery the following day with Dr. Joseph Pierz (R. at 138-41). On October 27, 2004, Dr. Pierz noted that Plaintiff walked with a limp on her right side, but she had a full range of motion of her right hip and good strength in flexion and extension (R. at 182). Dr. Pierz stated that "she can go back to her regular duty now, she just needs to exercise and with that and time she should be in pretty good shape and we will see her back as needed." Id. The record contains no further treatment notes from Dr. Pierz after October 27, 2004. Plaintiff underwent a consultative orthopedic examination, on May

16, 2005, with Dr. James Naughten, at the request of the SSA (R. at 297-300). Although

Dr. Naughten noted a "[m]ild antalgic gait favoring the right leg" and "right hip flexion [of]

90" degrees, his sole diagnosis was "[l]ow back pain secondary to herniated disc, as per

history" (R. at 298-99). Thus, the ALJ's failure to find Plaintiff's right hip impairment to

be severe is supported by substantial evidence.

On March 2, 2004, Dr. Pierz reviewed x-rays of Plaintiff's right knee (R. at 183).

Dr. Pierz found "some narrowing of the medial compartment and some early spur

formation so she does have some early arthritic change of the knee." Id. However, Dr.

Pierz found "full motion of her knees" and opted "not to do anything with this at this

time." Id. At Plaintiff June 14, 2004, examination with Dr. Pierz, he again found full

range of motion of Plaintiff's knee (R. at 182). On May 16, 2005, Dr. Naughten also

found a full range of motion in Plaintiff's knees (R. at 299). Thus, the ALJ did not err in

failing to find Plaintiff's right knee impairment to be severe.

### iii.    The ALJ's Analysis of Plaintiff's Mental Impairment is Supported by Substantial Evidence

Plaintiff further argues that the ALJ erred in failing to find Plaintiff afflicted with a

severe mental impairment. Plaintiff's Brief, pp. 16-17. Plaintiff bases her contention on

the findings of Dennis Noia, Ph.D., the SSA consulting psychiatric examiner. Id.

At step two of the sequential analysis, the ALJ failed to make a finding

concerning the severity of Plaintiff's mental impairment. However, it is clear from the

ALJ's decision that found her impairment not to be severe. This finding is supported by

substantial evidence.

Dr. Noia was the sole examining medical source to offer an opinion as to

17

Plaintiff's mental limitations. Dr. Noia diagnosed Plaintiff with an "[a]djustment disorder w[ith] depressed mood, chronic" (R. at 296). Dr. Noia opined that

> vocationally, the claimant appears to be capable of understanding and following simple instructions and directions. She appears to be capable of performing simple and some complex tasks with supervision and independently. She appears to be capable of maintaining attention and concentration for tasks. She can regularly attend to a routine and maintain a schedule. She appears to be capable of learning new tasks. She appears to be capable of making appropriate decisions. She appears to be able to relate to and interact appropriately with others. She appears to be having some difficulty dealing with stress.

Id. The ALJ adopted many of Dr. Noia's opinions in the RFC[10] (R. at 21).

On May 20, 2005, a disability analyst completed a non-severe impairment checklist (R. at 305). The analyst found that Plaintiff did not experience restrictions in daily activities; difficulties in maintaining social interaction; difficulties in maintaining concentration, persistence and pace; and had no repeated episodes of deterioration of extended duration. Id. This opinion was later reviewed and signed by Ed Kamin, Ph.D., on May 29, 2005. Id. Dr. Kamin also completed a form entitled "Psychiatric Review Technique," in which he found Plaintiff's anxiety-related disorders to be not severe (R. at 308).

Plaintiff appears to argue that the ALJ improperly rejected Dr. Noia's opinions, specifically his finding that Plaintiff would have difficulty with stress, in favor of the opinions from the disability analyst and Dr. Kamin. Plaintiff's Brief, p. 16. However, Plaintiff's argument must fail. As previously stated, the ALJ adopted many of Dr. Noia's findings in the RFC. Although the ALJ declined to convert Dr. Noia's finding that Plaintiff

---

[10] The ALJ found that Plaintiff "c[ould] understand remember and perform simple and some more complex tasks with supervision and independently, c[ould] maintain attention and concentration for tasks and c[ould] interact appropriately with others" (R. at 21).

"appear[ed] to be having some difficulty dealing with stress" into a finding of his own as a severe impairment, Dr. Noia's opinion standing alone is not sufficient to establish a severe impairment. Indeed, a severe impairment is one "that significantly limits [a claimant's] physical or mental ability to do basic work activities." Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). Examples of mental basic work activities include: "Understanding, carrying out, and remembering simple instructions; Use of judgment; Responding appropriately to supervision, co-workers and usual work situations; and Dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b)(3)-(6).

Here, Dr. Noia found that Plaintiff "appear[ed] to be capable of understanding and following simple instructions and directions. . . . She appear[ed] to be capable of maintaining attention and concentration for tasks. She c[ould] regularly attend to a routine and maintain a schedule. . . . She appear[ed] to be able to relate to and interact appropriately with others" (R. at 296). Dr. Noia's opinions are consistent with a finding of not severe. Therefore, the ALJ did not reject Dr. Noia's opinions in favor of the opinions from the disability analyst and Dr. Kamin. Indeed, all opinions are consistent with a finding of a non-severe impairment.

### c)  The ALJ's Must Necessarily Re-Evaluate Plaintiff's Credibility

Plaintiff argues that the ALJ erred in evaluating her credibility. Plaintiff's Brief, pp. 23-25.

"[A] claimant's subjective evidence of pain is entitled to great weight where . . . it is supported by objective medical evidence." Simmons v. U.S. R.R. Retirement Bd., 982 F.2d 49, 56 (2d Cir. 1992) (citations omitted). "However, the ALJ is 'not obliged to accept without question the credibility of such subjective evidence.'" Martone v. Apfel,

70 F.Supp.2d 145, 151 (N.D.N.Y. 1999) (quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)). In analyzing credibility, the ALJ must first determine whether the claimant has medically determinable impairments, "which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); S.S.R. 96-7p, 1996 WL 374186, at *2. Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. S.S.R. 96-7p, 1996 WL 374186, at *2; 20 C.F.R. § 404.1529(c); Borush, 2008 WL 4186510, at *12. Because "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," S.S.R. 96-7p, 1996 WL 374186, at *3, an ALJ will consider the factors listed in the regulations.[11] 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

If the ALJ finds Plaintiff's pain contentions are not credible, he must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief."  Young v. Astrue, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y. 1987)).

Here, the ALJ completed the two-step process by "find[ing] that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity,

---

[11] The listed factors are: (i) claimant's daily activities; (ii) location, duration, frequency, and intensity of claimant's symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (v) other treatment received to relieve symptoms; (vi) any measures taken by the claimant to relieve symptoms; and (vii) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

persistence and limiting effects of these symptoms are not entirely credible" (R. at 24).
The ALJ also considered several of the factors, including Plaintiff's daily activities and
medications. Id.

Thus, based on the record as it currently stands, the Court can find no error in
the ALJ's analysis of Plaintiff's credibility. However, the Court has previously
recommended remand for failure to properly apply the treating physician rule. Thus, on
remand, the ALJ should re-evaluate Plaintiff's credibility to accommodate any new
findings that affect Plaintiff's credibility, either positively or negatively.

### d) The RFC is Necessarily Flawed

Plaintiff argues that "the opinions of Dr. Pierz do not provide substantial evidence
for the Law Judge's functional conclusions." pp. 17-18.

Because of the previous errors in the ALJ's application of the treating physician
rule, the RFC is necessarily flawed. Therefore, the Court cannot reach whether the RFC
is supported by substantial evidence.

### e) On Remand, the ALJ Must Re-Evaluate Any Intellectual Deficits

Plaintiff contends that the ALJ failed to properly develop the record by failing to
order a consultative intellectual evaluation. Plaintiff's Brief, pp. 25-26. Plaintiff further
contends that this failure led the ALJ to erroneously characterize her educational
achievement as a high school graduate. Id.

The ALJ's sole discussion of Plaintiff's intellectual abilities was the finding that
that Plaintiff "ha[d] at least a high school education and [wa]s able to communicate in

English" (R. at 24). However, the record contains numerous examples of Plaintiff's intellectual deficits.

Plaintiff testified that she "can read and write to some extent; [her] spelling is terrible. [She] was in a Special Education class from second grade on through and [she] graduated with a diploma stating that [she] really d[id]n't have a 12th . . . grade education" (R. at 424). Plaintiff also testified that she was "pretty good" at "[a]dding and subtracting" (R. at 457). When asked whether she could add and subtract "[c]olumn numbers or just two numbers," Plaintiff responded that she "could do a column. The subtracting, it would take me a little longer because of the borrowing and all that stuff." Id. Plaintiff also stated that she was "not real good" at division. Id. Plaintiff's attorney asked whether Plaintiff completed several forms in her disability application, to which Plaintiff responded in the affirmative. Plaintiff's attorney then asked whether "f r a c k e y,[12] [was] factory." Id. Plaintiff responded with "[y]eah. That's not how you spell it?" Id. Plaintiff's disability reports contain numerous other illustrations of limited language skills.[13] For example, when asked to expand on her ability to drive, Plaintiff responded "I don't drive right know [sic]. I just had back serger [sic] and it herts [sic] to sit up very long. I don't dare drive" (R. at 81). The ALJ failed to acknowledge this evidence in his decision.

Based on the evidence that Plaintiff attended special education  starting in the second grade, has deficits in advanced math, deficits in language skills, and presented evidence of an intellectual impairment, ALJ should have considered whether any intellectual deficits impacted Plaintiff's ability to work. See 20 C.F.R. § 404.1512(a) ("We

---

[12] In a work history report, Plaintiff wrote that she worked at a "Frackey [sic]" from 1985 to 1993 (R. at 70).
[13] Plaintiff testified that she completed the disability forms (R. at 457-58).

will consider only impairment(s) you say you have or about which we receive evidence."). Furthermore, if the ALJ felt the above evidence was not adequate to make a determination, the Regulations allow him to obtain an intellectual consultative examination. 20 C.F.R. § 404.1512(f) ("If the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source, we will ask you to attend one or more consultative examinations at our expense.").

### f)   The ALJ's Finding at Step Five is Necessary Flawed

Plaintiff argues that the ALJ's finding that Plaintiff could perform work in the national economy in significant numbers is not supported by substantial evidence. Plaintiff's Brief, pp. 32-34.

Because of the ALJ's previous errors, the ALJ's findings at step five of the sequential analysis are necessarily flawed. Therefore, the Court cannot reach whether those findings are supported by substantial evidence.

### IV. Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).

## V.    Conclusion

After carefully examining the administrative record, the Court finds that the ALJ erred in applying the treating physician rule. It is therefore recommended that the Commissioner's decision denying disability benefits be REMANDED for further proceedings in accordance with this recommendation and pursuant to sentence four of 42 U.S.C. Section 405(g).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED:        Syracuse, New York
              June 28, 2010

### ORDER

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985);   *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989);   *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge

Syracuse, New York
DATED:       June 28, 2010